**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

SUE BERTHOLD,                                    )
                                                 )
            Plaintiff,                           )
                                                 )   Case No.  4:20-cv-1167
                                                 )
v.                                               )   **JURY TRIAL DEMANDED**
                                                 )
                                                 )
THE STANDARD FIRE INSURANCE                      )
COMPANY                                          )
                                                 )
            Defendants.                          )

## INTRODUCTION

1.      This lawsuit exposes a pattern and practice in the Missouri property insurance industry in which insurance companies regularly, and as their standard operating procedure, gain advantage over their insureds and others through the use of unlawful subrogation practices. This occurs every time an insurance company, behind the backs of their insureds, unlawfully seeks reimbursement through a "subrogation claim" from the insurance company of a third party tortfeasor. The insurance company is "reimbursed", yet does not return its insured's deductible, and when its insured files suit against the tortfeasor she will learn that, in fact, the tortfeasor's insurance company believes it has already satisfied the insured's claims.

2.      These practices harm insureds and are contrary to Missouri law. While the insurance companies defend these practices as "voluntary payments" between insurance companies, that do not legally affect the rights of the insureds to seek judgments against tortfeasors, nothing could be further from the truth. When a tortfeasor's insurance company has already paid another insurance company in reimbursement for claims paid to the latter's insured,

1

it has *de facto* already settled with that insured. Indeed, the insured's insurer *represents falsely to the tortfeasor's insurer that it has the legal right—conferred by its insured—to seek reimbursement.* Then, when the insured negotiates a settlement of its claims with the tortfeasor, the tortfeasor's insurance company factors the reimbursement payments into its calculations, and accordingly will offer or accept less. The ability of an insured to be fully compensated for his losses is therefore diminished.

3.      In addition, the unlawful subrogation practices complained of herein enable insurance companies to avoid paying their legally mandated pro-rata share of litigation expenses and attorney's fees and fully compensating consumers for their covered losses. This is done through an egregious abuse of the insurer-insured relationship whereby the insurer—without the consent or knowledge of its insured—acts as its insured's attorney in negotiating and arbitrating a prospective legal dispute with the tortfeasor's insurance company.

4.      The wrongful acts by Missouri insurance companies, including the Defendant here, distort the Missouri property insurance market to the detriment of Missouri insurance consumers. The unlawful practices complained of herein have the effect of thwarting the purpose of insurance because such practices put the needs of the insurance companies over their obligation to make their insureds whole following covered losses. These practices must end because they are unlawful and damage consumers, often without consumers' knowledge.

5.      In Missouri, in the context of property damage claims, subrogation only exists as and between an insurance company and its named insured.

6.      In Missouri, an insurance company for a property damaged insured, after making payment to its insured for the property damage, can never make a "subrogation" claim or file a

2

lawsuit against the tortfeasor who caused the property damage, or that tortfeasor's insurance company.

7.     In Missouri, an insurance company can only present a subrogation claim to its own insured; and then, only after the insured has recovered monies from a third-party tortfeasor or that tortfeasor's insurance company, for the injuries and damages arising from the incident that caused the property damage.

8.     In Missouri, if the amount recovered by the insured from a third-party tortfeasor or that tortfeasor's insurance company, is in an amount less than the insured's "uninsured losses," i.e. those losses not covered and paid out by the insured's insurance company, then the insurance company recovers nothing on its subrogation claim directed to its insured.

9.     Under Missouri law, Plaintiff offers the following example as to how property damage subrogation claims are to be handled:

*Driver A is involved in an automobile collision with Driver B. Both drivers are fully insured. Driver B is 100% a fault for the collision. Driver A's vehicle suffers property damage. Driver A submits his property damage claim to his insurance company and that insurance company pays for the property damage less Driver A's deductible. Driver A then files a claim against Driver B for damages including, but not limited to, his property damage claim. Driver A thereafter settles all of his claims with Driver B's insurance company. Driver A then notifies his insurance company of the settlement and holds those funds "in trust" for his insurance company pending determination of his insurance company subrogation interest, if any, in the funds recovered by settlement. If the "uninsured losses" exceed the amount recovered, then Driver A owes nothing to their insurance company on his subrogation claim.*

10.     Using the same example as set out hereinabove, here is how Defendant Standard is in fact, handling these subrogation claims illegally and unlawfully.

*Driver A's insurance company pays the Driver A's claim less Driver A's deductible. Then Driver A's insurance company, without the consent of Driver A, directs a "subrogation" claim to Driver B's insurance company. Driver B's insurance company then pays Driver A's insurance company in full for the amount that Driver A's insurance company paid to Driver A without any consideration or reduction for Driver A's "uninsured losses."*

11.     For the year 2018, in Missouri, Defendant Standard paid out approximately $1,455,371[1] to its Missouri citizen insureds for automobile property damage sustained by its insureds as a result of collisions that occurred in the State of Missouri. Following a number of those payments, on information and belief, Defendant Standard made unlawful and illegal "subrogation claims" directed to the insurance company for the tortfeasor whose negligence caused Standard's insureds' property damage.

12.     During the same time period, Defendant Standard paid out approximately $1,162,728[2] in automobile liability property damage claims on behalf of its insureds for automobile property damage suffered by others as a result of the negligence of its insureds, but rather than making those payments to the person who suffered property damage, Defendant Standard made payments to the insurance companies for those persons.

13.     Thus, Defendant Standard presented "subrogation claims" against insurance companies that issued policies to third-party tortfeasors, without consent of Plaintiff insureds, despite existing Missouri law which does not permit such activity.

---

[1] As reported to Missouri Department of Insurance as 2018 Supplemental Data for Property and Casualty
[2] *Id.*

14.     Plaintiff has been damaged by the unlawful practices of Defendant by, *inter alia,* her insurance company making "subrogation claims" on her behalf but without her consent, failing to fully compensate Plaintiff, and withholding from Plaintiff her deductibles after paying a portion of Plaintiff's covered property losses.

15.     Plaintiff has been deprived the ability to be made whole due, at least in part, to Defendant Standard 's unlawful "subrogation claims."

16.     Defendant Standard deprived Plaintiff of any ability to negotiate, arbitrate, or affect any payments between the third party insurance company and Standard, the amount of which payment affected Plaintiff's rights and obligations as to Defendant Standard. As, for example, Plaintiff may be obligated to pay Defendant Standard the difference between the payment to Defendant Standard from a tortfeasor's insurance company and the amount Plaintiff received from Standard as reimbursement for claims made.

17.     Defendant Standard deprived Plaintiff of her legal rights by, without Plaintiff's knowledge or consent, representing to third party insurance company that Standard possessed the legal right to make a "subrogation claim" on behalf of Plaintiff when inf act, it has no such legal right.

18.      Plaintiff was harmed by Defendant Standard'ss misrepresentation to the third party insurance company. For example, had Defendant Standard negotiated Plaintiff's legal claims with the third party insurance company for the full amount of the monies Defendant Standard paid to Plaintiff pursuant to their insurance agreement, Plaintiff could have benefitted from a setoff in the event Defendant Standard  made a legitimate subrogation claim against Plaintiff.

19.     Additionally, by way of example, any monies paid by the third party insurance company to Defendant Standard —based on Defendant Standard's purported "subrogation claim"—is monies that the third party insurance company would not pay to Plaintiff in settlement of Plaintiff's claim against the tortfeasors (insureds of the third party insurance company). Notwithstanding the possibility that the tortfeasors would not be entitled to a setoff of amounts paid by the third party insurance company to Defendant Standard, the third party insurance company would not be inclined to pay Plaintiff (in a settlement, for example) when it already paid Defendant Standard  (on its "subrogation claim") for the same purpose.

20.     Plaintiff alleges that, pursuant to Fed. R. Civ. P. 11(b)(3), it is likely to have evidentiary support after a reasonable opportunity for discovery that the third party insurance company's willingness and ability to settle (and the amounts it was willing to offer or accept) was unduly influenced (to Plaintiff's detriment) by the monies it paid to Defendant Standard pursuant to Standard's "subrogation claim." Such factors further adversely affected Plaintiff's negotiating position and negatively affected the value of Plaintiff's legal claims, which were unlawfully coopted and unlawfully asserted by Defendant Standard.

21.     Furthermore, Plaintiff has been damaged by the unlawful practices of Defendant Standard to the extent that such unlawful "subrogation claims" direct at, and paid by, insurance companies for third-party tortfeasors have delayed, prevented or otherwise interfered with, Plaintiff's ability to recover monies from such third-party insurance companies.

22.     For every wrong there is a remedy. Defendant Standard unlawfully represented to another insurance company that Plaintiff granted it a "subrogation claim" and thereby induced the other insurance company to remit a "reimbursement" payment to Standard. At the same time, Plaintiff has not been made whole, and sought recovery from the tortfeasors that had caused their

6

damages. The tortfeasor's insurance company balked at paying the same claim twice and, even after settling their action, the Plaintiff was prevented from sharing litigation expenses and attorneys' fees with Defendant Standard *even though* Standard had already recovered a "reimbursement" from the insurance company. Defendant Standard abused its position of trust and misrepresented its rights to put itself first before its insured. As a result, Plaintiff was damaged and Standard was enriched.

23.     The aforementioned "subrogation claims" were, and continue to be, illegal in the State of Missouri because in Missouri, subrogation exists only between an insurance company and its insured, and subrogation exists only after the insured has been fully compensated for all losses caused by a tortfeasor including those losses not covered by the policy of insurance issued by the insurers to their insureds, and only after all of the insured's legal expenses, if any, are deducted.

24.     The insurance company Defendant presented "subrogation claims" against the insurance company that issued policies to the third party tortfeasor, without the consent of Plaintiff insured, and despite Missouri law which does not permit such activity.

25.     Plaintiff has been damaged by the unlawful practices of her Defendant insurance company, insurance companies for third-party tortfeasors, by, *inter alia*, her insurance company making "subrogation claims," purportedly on her behalf but without her consent, proceeding with these "subrogation claims" through arbitration without her consent, failing to fully compensate her, and withholding from her deductible, and only paying a portion of Plaintiff's covered property losses.

## PARTIES

26.     Plaintiff Sue Berthold is a Missouri citizen and resident who, within the last five years, suffered damage to real property in Missouri as a result of the negligence of a third-party tortfeasor not named in this action.

27.     Defendant Standard Fire Insurance Co. ("Standard") is a foreign insurance company incorporated in the State of Connecticut with a principal place of business in Connecticut. Standard is duly authorized in accordance with the laws of the State of Missouri to write, sell and process both casualty and liability insurance in the State of Missouri.

## JURISDICTION AND VENUE

28.     Jurisdiction is proper in Federal Court pursuant to CAFA, 28 U.S.C. § 1332(d)(2), as it is a controversy that exceeds $5,000,000 and is a class action with a class member that is a citizen of a State different from any Defendant.

29.     Venue is proper in the Eastern District of Missouri pursuant to 28 U.S.C. 1391(b)(2), as "a substantial part of the events or omissions giving rise to the claim occurred" in the Eastern District of Missouri.

## FACTUAL BACKGROUND

### A. Relationship Between Plaintiff Sue Berthold and Defendant Standard

30.     On or about November 1, 2018, Plaintiff Sue Berthold was involved in an automobile accident with a third-party tortfeasor not named in this action.

31.     On or about November 1, 2018, Plaintiff Sue Berthold sustained damage to her vehicle that resulted in a total loss.

32.     At the time of the collision, Plaintiff was insured by a policy of insurance by Defendant Standard (Policy No. 6032865442031).

33.     The tortfeasor was insured by a policy of insurance issued by State Farm.

8

34.     As a result of the November 1, 2018 automobile collision, Plaintiff Sue Berthold made a claim to Defendant Standard for property damage. Standard paid a portion to Plaintiff Sue Berthold. The amount that Plaintiff Berthold received was less than the damages she was entitled to.

35.     After paying a portion of the property damage covered by her policy, Defendant Standard made a "subrogation claim" directed to the tortfeasor's insurance company State Farm which State Farm paid.

36.     Defendant Standard and State Farm privately negotiated and/or arbitrated the "subrogation claim" and together came to an agreement regarding *inter alia,* who was at fault, the amount of damages or loss involved, whether any discounts should be applied, and other matters affecting the rights of the Plaintiff, without the Plaintiff's knowledge and/or consent.

**B.  Overview of the Parties' Dispute**

37.     Defendant Standard is an insurance company duly licensed and authorized to write liability and casualty insurance policies in the State of Missouri in accordance with the statutes, regulations, and law of the State of Missouri.

38.     Standard issued policies of liability and casualty insurance for the named Plaintiff and to putative class members not named here.

39.     Standard paid or asserted unlawful "subrogation claims" without the consent of their named insured.

40.     In Missouri, a subrogation interest is equitable in nature and exists only as and between an insurance company and its named insured.

41.     In Missouri, a property casualty insurer has no legal right to make a direct claim against an alleged tortfeasor or the alleged tortfeasor's liability insurer for reimbursement of

9

payments it made to its insured. *Hagar v. Wright Tire & Appliance, Inc.,* 33 S.W.3d 605, 610 (Mo. Ct. App. 2000). ("Missouri provides that the legal title to the cause of action [against the tortfeasors] remains in the insured, and that the insurer's only interest is an equitable right to subrogation.").

42.     In Missouri, a subrogation claim does not accrue unless, and until, an insured recovers monies from or on behalf of the third party tortfeasor responsible for the insured's property loss. *Hagar,* 33 S.W.3d at 610.

43.     In Missouri, an insured is not obligated to reimburse its property casualty insurer for payments that an insurance company made to the insured under the insured's property and casualty insurance policy for an insured loss unless the amount received from or on behalf of a third party tortfeasor exceeds the value of the insured's "uninsured loss."

44.     In Missouri, an insurance company properly asserting a subrogation claim against its insured must reduce that claim by its pro-rata share of the litigation expenses and attorney's fees incurred by the insured in the process of recovering funds from the third party tortfeasor responsible for the insured's loss. *Keisker v. Farmer,* 90 S.W.3d 71, 75 (Mo. 2002)(En banc).

45.     Defendant Standard, after paying a portion of the property damage claims to its named insured, including the named Plaintiff, and without the consent of the insured, presented illegal "subrogation claims," to other liability insurance companies covering liability claims for the third-party tortfeasors responsible in negligence for the property damage loss suffered by the Plaintiff.

46.     As a result of the aforementioned acts, Plaintiff suffered a monetary loss when the Defendant insurance company unlawfully and illegally retained Plaintiff's deductibles after

receiving full payment from their unlawful "subrogation claims" to the third party tortfeasors'
insurance company, and Plaintiff will in the future continue to suffer monetary loss.

47.     As a result of the aforementioned acts, Plaintiff suffered other monetary losses
when Defendant Standard failed to fully compensate Plaintiff.

48.     As a result of the aforementioned acts, Plaintiff was also damaged when, because
of Defendant Standard's illegal "subrogation claims" directed at third-party tortfeasors'
insurance companies, Defendant Standard delayed, prevented, or otherwise interfered with,
Plaintiff's ability recover monies from such third-party insurance companies.

49.     As a result of the aforementioned acts, Plaintiff suffered a monetary loss when
Defendant, by its "subrogation claim" prevented Plaintiff from being able to obtain a full
recovery from the third party tortfeasor for her property damages, including uninsured losses.

50.     As a result of the aforementioned acts, Plaintiff suffered a monetary loss when
Defendant, by its "subrogation claim" failed to reduce its claim by a pro-rata share of litigation
expenses and attorney's fees incurred by Plaintiff in the process of recovering funds from the
third party tortfeasor responsible for Plaintiff's loss.

51.     As a result of the aforementioned acts, Plaintiff was also damaged when, because
of Defendant Standard'ss illegal "subrogation claims" directed at third-party tortfeasors'
insurance companies, Plaintiff recovered less than she otherwise would have recovered from
third party tortfeasors, or their insurance companies, due to the third party insurance companies
having already paid over monies to Standard without Plaintiff's knowledge or consent.

52.     As a result of the aforementioned acts, Plaintiff was also damaged to the extent
that Defendant Standard  withheld payments it received from State Farm, as reimbursement for
payments it made to Plaintiff pursuant to Standard's "subrogation claim" when, in fact, the

amount received by Plaintiff from or on behalf of the third party tortfeasors did not exceed Plaintiff's "uninsured losses."

53. As a result of the aforementioned acts, Defendant Standard has been unjustly enriched to the extent that Defendant Standard withheld payments it received from State Farm, as reimbursement for payments it made to Plaintiff pursuant to Standard's "subrogation claim" when in fact, the amount received by Plaintiff from or on behalf of the third party tortfeasors did not exceed Plaintiff's "uninsured losses"

54. As a result of the aforementioned acts, Plaintiff was also damaged when Defendant Standard prematurely and wrongfully asserted and was paid on, a "subrogation claim" to and by State Farm, which had the purposeful effect of Defendant Standard avoiding reducing its subrogation claim by the pro-rata share of the litigation expenses and attorney's fees incurred by Plaintiff in the process of recovering funds from the third-party tortfeasors for Plaintiff's loss. *See Keisker v. Farmer,* 90 S.W.3d 71, 75 (Mo. 2002)(En banc).

55. Defendant Standard's assertion of a "subrogation claim" in the context and manner described above and herein is, on information and belief, designed to advantage Defendant Standard to the detriment of its insureds, including Plaintiff.

56. The assertion of  premature and unlawful "subrogation claims" as described herein benefits Defendant Standard, to the detriment of its insureds, including Plaintiff, by: (1) avoiding reducing Standard's legitimate subrogation claim by a pro-rata share of the litigation expenses and attorney's fees incurred to secure recovery from the tortfeasors; (2) enabling Defendant Standard to negotiate, arbitrate and/or settle its insureds claims in a manner advantageous to Standard without involving its insureds; (3) enabling Defendant Standard to secure reimbursement for monies paid to its insured early and in advance of any judicial

determination of fault, damages, or "uninsured losses"; (4) securing reimbursement for Defendant Standard of monies paid to its insured that Standard is not entitled to; and (5) securing reimbursement for Defendant Standard (without its insured knowledge or consent) while simultaneously retaining Standard's ability to seek reimbursement from its insured and/or additional reimbursement from the tortfeasors or the tortfeasors' insurance companies.

57.     The assertion of premature and unlawful "subrogation claims" as described herein harms insured of Defendant Standard, including Plaintiff, by (1) limiting the ability and willingness of third party tortfeasors' and/or third party tortfeasors' insurance companies to pay for and/or settle claims brought by injured parties, including Plaintiff; (2) avoiding sharing in the Standard's-insureds litigation expenses and attorneys' fees expended to recover from third party tortfeasors; (3) excluding Standard-insureds, including Plaintiff form participating in adversarial negotiations, arbitrations and/or settlement discussions with third party insurance companies wherein issues related to fault, losses, damages and causation are determined and, the result of which, affects the amounts that the third party insurance company is willing to pay to Standard-insureds and the amount to which Standard-insureds may be liable for reimbursement to Standard pursuant to legitimate subrogation claims.

58.     In asserting "subrogation claims" that did not belong to it, Defendant Standard represented falsely to a third party insurance company (State Farm) that it had a right to reimbursement of the amount it paid to Plaintiff. Defendant Standard represented falsely to State Farm that it possessed the legal right to recover on behalf of Plaintiff when in fact, all it held was a subrogation interest.

59.     This was done to induce payment by the third party insurance company to Defendant Standard. As a result of the third party insurance company's reliance on Standard's

representation, the insurance company State Farm paid $11,000+ to Defendant Standard which was paid in order to satisfy Plaintiff's claims against the third party tortfeasor and their insurance company.

## ALLEGATIONS COMMON TO THE CLASS

60. This action is brought pursuant to Federal Rule of Civil Procedure 23 on behalf of the Plaintiff and all similarly situated individuals consisting of:

a.      such Missouri citizens having a policy of insurance issued in the State of Missouri by the named Defendant, that suffered property damage in the State of Missouri caused by a third party tortfeasor to which the Defendant received money on a "subrogation claim" and in which Plaintiff was harmed by Defendants' "subrogation claim"; such as Plaintiff was not fully compensated by either failing to receive their deductible; by Defendants failing to share their portion of the litigation expenses Plaintiff expended to recover against the third party tortfeasors; or by Defendants interfering with Plaintiff's ability to recover monies from third party tortfeasors or their insurance companies.

61. The class is so numerous that joinder of all members of the class is impracticable as the number of putative class members are counted in the thousands.

62.      Plaintiff reserves the right to amend or modify the definitions of the Class with greater specificity, further division into subclasses or to limit particular issues as discovery and orders of this Court warrant.

63. There are questions of law and fact common to the class, as each putative class member seeks an order from this court declaring that the Defendants' "subrogation claims" made directly to third party tortfeasors or their insurers are unlawful and illegal in the State of Missouri.

64.     The claims of representative Plaintiff are typical of the claims of the class as each of their property casualty insurance companies have submitted or paid unlawful and illegal "subrogation claims" directed to third party tortfeasors or their insurers.

65. Plaintiff will fairly and adequately represent and protect the interests of the putative class. Plaintiff retained competent and experienced counsel in the prosecution of this type of litigation.

66. The prosecution of separate actions by or against individual members of the class would create the risk of incompatible standards of conduct for members of the class and the Defendant.

67. The prosecution of separate actions by or against individual members of the class would create the risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interest of other members not parties to the adjudications, or substantially impair and impede their ability to protect their interest.

68. The class action mechanism created by Federal Rule of Civil Procedure 23, is a superior and more efficient method of addressing the issues contained herein promoting judicial economy as the named Plaintiff and the putative class members cannot afford to litigate against Defendants individually, thereby making this class action the preferable method of disposing of said claims together, as opposed to piecemeal litigation. The Defendant has acted or refused to act on grounds generally applicable to the class, thereby making final declaratory judgment relief and/or final injunctive relief appropriate in this matter.

69. The questions of law and fact common to the class predominate over any questions affecting only individual members and, therefore, a class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the only core

issue for this court to determine is whether the Defendant acted unlawfully and illegally in presenting "subrogation claims" to third party tortfeasors or their insurers.

## COUNT I: DECLARATORY JUDGMENT

COMES NOW Plaintiff, on her behalf and seeks a declaratory judgment from this Court, and as a basis for said request, Plaintiff states:

70.     Plaintiff incorporate by reference herein paragraphs 1 through 69 of this Complaint.

71.     An actual and genuine justifiable controversy exists, between the Defendant on the one hand and the Plaintiff concerning Defendant's collection and/or payments of any monies arising from a direct "subrogation claim" against an alleged third party tortfeasor or its insurer seeking reimbursement of payments made to an insured by the Defendant has resulted, or imminently will result, in depriving Plaintiff of her deductibles, legal expenses and costs incurred in recovering funds from third party tortfeasors, and her ability to present claims for damages.

72.     Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Plaintiff requests declaratory judgment concerning the following:

a.     Defendant's collection and/or payment of any monies arising from a "subrogation claim" against an alleged third party tortfeasor or its insurer seeking reimbursement of payments made to an insured by the Defendant is unlawful and illegal.

b.     Defendant's failure to reduce its "subrogation claim" against its insured by a pro-rata share of the insured's attorney's fees and expenses incurred in securing payment from a third party tortfeasor is unlawful.

16

c. Defendant's presentation of a subrogation claim against its insured when the insured has not been fully compensated for its "uninsured loss" is unlawful.

73. As the Defendant is authorized and exists in accordance with Missouri law, Defendant knew or should have known that its actions were illegal and unlawful.

74. As such, an actual and genuine controversy exists between the Parties, and this Court is vested with the power to declare the rights and liabilities of the Parties with regard to Defendant's actions and/or Missouri laws.

75. Because Defendant's actions have interfered with Plaintiff's ability to present claims for damages to third party tortfeasors, there exists no alternative remedy for Plaintiff to redress her injuries and/or rights.

WHEREFORE, for Count I Plaintiff prays for an Order of this Court on her behalf, and declaring that the actions of the aforementioned Defendant are unlawful and illegal, and preventing Defendant from all similar unlawful acts in the future.

## COUNT II: INJUNCTIVE RELIEF

COMES NOW Plaintiff, on her behalf, and for Count II of this Complaint directed to Defendant for injunctive relief, state as follows:

76. Plaintiff incorporates by reference herein paragraphs 1 through 75 of the Complaint.

77. Assuming Plaintiff succeeds on the merits, Plaintiff will be irreparably harmed if Defendant insurance company is not enjoined from continuing this illegal practice of submitting "subrogation claims" without Plaintiff's consent to the third party tortfeasor's insurer, receiving payment from that insurer, and then withholding Plaintiff's deductibles.

17

78.     The balance of harms weighs in favor of Plaintiff as Defendant's actions are illegal and no harm will occur to Defendant if stopped from making an unlawful "subrogation claim" without the consent of Plaintiff.  Plaintiff, on the other hand, will be harmed as Defendant insurance company will continue to make unlawful "subrogation claims" without Plaintiff's consent, and Plaintiff will continue not to be fully compensated due to Defendant Insurance Company withholding her deductibles.

79.     The grant of a permanent injunction weighs in favor of the public interest.

WHEREFORE, for Count II of this Complaint, Plaintiff prays for an Order of this Court on her behalf, preventing Defendant from engaging in its past and present unlawful "subrogation claim" practices.


## COUNT III: UNJUST ENRICHMENT

COMES NOW Plaintiff, on her behalf for Count III of this Complaint directed to the Defendant for unjust enrichment, state as follows:

80.     Plaintiff incorporates by reference herein paragraphs 1 through 79 of this Complaint.

81.     Plaintiff conferred a benefit upon Defendant when the Defendant retained Plaintiff's deductible even though the Defendant had received or paid the full amount of what would have properly been Plaintiff's claims against a third party tortfeasor.

82.     Additionally, Plaintiff conferred a benefit by paying her premiums and were denied the benefit of her right to seek relief from the third party tortfeasors.

83.     Defendant appreciated the benefit.

84.     Defendant accepted and retained the benefit under inequitable and unjust circumstances given Defendant's illegal and unlawful conduct.

85.     As a direct and proximate result of the aforementioned illegal and unlawful acts the Defendants has become unjustly enriched in receiving funds that it was not legally entitled to receive.

86.     Defendant's illegal and unlawful conducts are hereinbefore set out was willful, wanton and malicious, and done with conscious disregard of the rights of the Plaintiff.

WHEREFORE, for Count III of her Complaint Plaintiff prays for an Order of this Court on her behalf requiring Defendant to disgorge themselves of all unlawfully recovered funds, and Plaintiff prays for exemplary and punitive damages on her behalf, and on behalf of all others similarly situated.

## COUNT IV: IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

COMES NOW Plaintiff, on her behalf and on behalf of others similarly situated, and for Count IV of this Complaint directed to the Defendant for breach of the implied covenant of good faith and fair dealing, state as follows:

87.     An express contract or agreement existed between Plaintiff and Defendant for insurance, the terms of which included an implied covenant of good faith and fair dealing. Under the agreement, Defendant agreed to insure Plaintiff for property damages and other damages in the event of losses in exchange for Plaintiff's payment of premiums to Defendant. Plaintiff incorporates by reference herein paragraphs 1 through 85 of this Complaint.

88.     An implicit term of the insurance agreements is that Defendant has no right to prosecute claims on behalf of Plaintiff directly, nor any right to arbitrate or settle Plaintiff's claims directly, without Plaintiff's consent.

89.     Another implicit term of the insurance agreement is that Defendant will not take any actions that would compromise, impair or undermine Plaintiff's rights with respect to third parties or with respect to recovery of monies from third parties for their losses.

90.     Defendant breached its duties of good faith and fair dealing under the insurance contracts with Plaintiff by asserting in bad faith "subrogation claims" against third party insurance companies, without Plaintiff's knowledge or consent, and receiving money from said third party insurance companies in purported satisfaction of said "subrogation claims."

91.     Defendant's breached its duties of good faith and fair dealing under the insurance contract with Plaintiff by falsely and in bad faith representing to third party insurance companies that Defendant was acting on behalf of Plaintiff and had Plaintiff's authorization and consent to submit said "subrogation claims" when in fact Plaintiff had no knowledge of Defendant's activities.

92.     As a direct and proximate cause of Defendant's breach of its duties of good faith and fair dealing, Plaintiff has suffered damages and Defendant has been unjustly enriched by, for example, (1) lowering the amount that Plaintiff recovered from the tortfeasors or the tortfeasor's insurance companies by virtue of the tortfeasors/insurance companies unwillingness to pay more than once on the same claim; (2) Defendant Standard avoidance of reducing its subrogation claim by a pro-rata share of the litigation expenses and attorneys' fees expended by Plaintiff  to recover from the tortfeasors; (3) Plaintiff's inability to reduce its share of litigation expenses and attorney's fees expended to recovery from the tortfeasors when, in fact, Defendant Standard was partially reimbursed by State Farm for claims made by Plaintiff; (4) Defendant Standard's receipt of reimbursement despite Plaintiff's extant "uninsured loses"; and (5) Plaintiff's

20

continuing "uninsured losses" despite Defendant Standard having received monies pursuant to Plaintiff's legal claims (Defendant Standard's "subrogation claim").

93.     Defendant's illegal and unlawful conduct as hereinbefore set out was willful, wanton and malicious, and done with conscious disregard of the rights of the Plaintiff.

WHEREFORE, for Count IV of her Complaint Plaintiff prays for an Order of this Court on her behalf requiring Defendant to disgorge themselves of all unlawfully recovered funds, and Plaintiff prays for exemplary and punitive damages on her behalf, and on behalf of all others similarly situated.

## COUNT V: MONEY HAD AND RECEIVED

COMES NOW Plaintiff on her behalf and on behalf of others similarly situated, for Count V of Complaint, claims a right to money had and received by Defendant, and as a basis for said request, Plaintiff states as follows:

94.     Plaintiff incorporates by reference herein paragraphs 1 through 91 of this Complaint.

95.     Plaintiff paid premiums, pursuant to her respective insurance contracts, to the Defendant to insure her for her covered property losses.

96.     Plaintiff suffered property damage and made claims to her Defendant insurance company as claims for her property losses.

97.     Defendant Insurance Company paid Plaintiff some portion of her losses for her property damage but did not fully compensate Plaintiff.

98.     Defendant Insurance Company paid Plaintiff some portion of her losses for her property damage and withheld the amount of Plaintiff's deductible.

99.     Defendant Insurance Company made unlawful "subrogation claims," through Defendant Arbitration Forums, against third-party tortfeasors' insurance companies concerning the Plaintiff's property loss.

100.    The third-party tortfeasors' insurance company, through Defendant Arbitration Forums, paid the Defendant Insurance Company in satisfaction of the Defendant insurance company's unlawful "subrogation claims."

101.    This was done without the consent of the Plaintiff.

102.    Plaintiff was not fully compensated by the Defendant insurance company for her property losses.

103.    Defendant Standard did not reimburse Plaintiff for the deductibles that were withheld by Defendant, even once Defendant had received money from its unlawful "subrogation claims," thus receiving and retaining possession of the Plaintiff's money.

104.    As a result, Defendant appreciated the benefit as it have in its possession money that rightfully belongs to Plaintiff and which, in equity and good conscience, should be paid over to Plaintiff.

105.    The Defendant's acceptance and retention of the Plaintiff's deductibles was unjust.

106.    Defendant's illegal and unlawful conduct as hereinbefore set out was willful, wanton and malicious, and done with conscious disregard of the rights of the Plaintiff.

WHEREFORE, for Count V of this Complaint, Plaintiff prays for judgment against Defendant on Count IV of this Petition, for an award of damages in an amount at least equal to the amount unjustly had and received by Defendant pursuant to the false representation that Defendant had the legal right, conferred by Plaintiff, to reimbursement from a third party,

prejudgment and post-judgment at the statutory rate, costs, and for such further relief as the Court deems proper, and Plaintiff prays for exemplary and punitive damages on her behalf, and on behalf of all others similarly situated.

### COUNT VI: BREACH OF CONTRACT

COMES NOW Plaintiff on her behalf and on behalf of other similarly situated, and for Count VI of this Complaint, claim against Defendant for breach of contract, and as abasis for said request, Plaintiff state as follows:

107.    Plaintiff incorporates by reference herein paragraphs 1 through 103 of this Complaint.

108.    An express contract or agreement existed between Plaintiff and Defendant for insurance. Under the agreement, Defendant agreed to insure Plaintiff for property damages and other damages in the event of losses in exchange for Plaintiff's payments of premiums to Defendants.

109.     In addition, the contracts provided that Defendant had subrogation rights as against Plaintiff in the event that Defendant paid claims to Plaintiff suffering losses and Plaintiff also recovered monies for such losses from a third party insurance company or third party defendant.

110.    Defendant breached its contracts with Plaintiff by prematurely and unlawfully asserting "subrogation claims" against a third party insurance company, without the knowledge or consent of Plaintiff, for which Defendant had no legal right to assert.

111.     In asserting said "subrogation claims" against the third party insurance company, Defendant purported to act within its contractual rights but, in fact, Defendant's actions were illegal and in breach of the contract between Plaintiff and Defendant.

112.    As a direct and proximate result of Defendant's breach, Plaintiff has been damaged. As examples, Defendant Standard's breach affected and caused (1) a lowering of the amount that Plaintiff recovered from the tortfeasors or the tortfeasors' insurance companies by virtue of the tortfeasors/insurance companies unwillingness to pay more than once on the same claim; (2) Plaintiff's inability to reduce its share of litigation expenses and attorneys' fees expended to recovery from the tortfeasors when, in fact, Defendant Standard was partially reimbursed by State Farm for claims made by Plaintiff; (3) Plaintiff's failure to fully or more fully receive compensation for covered losses at least to the extent of "subrogation claims" monies that are being withheld from Plaintiff by Defendant Standard; and (4) Plaintiff's continuing "uninsured losses" that, despite Defendant Standard's having received monies pursuant to Plaintiff's legal claims (Defendant Standard's "subrogation claim").

WHEREFORE, for Count VI of this Complaint, Plaintiff prays for compensatory damages on her behalf, and on behalf of all others similarly situated, against the Defendant, together with Plaintiff's costs herein expended.

## COUNT VII: COMPENSATORY DAMAGES

COMES NOW Plaintiff on her for Count VII of this Complaint, claim compensatory damages from Defendant, and as a basis for said request, Plaintiff states as follows:

113.    Plaintiff incorporates by reference herein paragraphs 1 through 109 of this Complaint

114.    As a direct and proximate result of the unlawful and illegal actions of the Defendant, Plaintiff has been damaged in the following respects, to-wit:

a.  Plaintiff has failed to receive the full amount of her "deductible" as that term is used and defined in the insurance policies issued by Defendant Standard to the named Plaintiff Sue Berthold.

b.  Plaintiff has failed to receive funds for any legal expenses or costs incurred in recovering funds from third party tortfeasors;

c.  Defendant has interfered with the Plaintiff's ability to present claims for damages.

115.    Defendant illegal and unlawful conduct as hereinbefore set out was willful, wanton and malicious, and done with conscious disregard of the rights of the Plaintiff.

WHEREFORE, for Count VII of this Complaint, Plaintiff prays for compensatory damages on her behalf, and on behalf of all others similarly situated, against the Defendant, together with Plaintiff's costs herein expended, and Plaintiff prays for exemplary and punitive damages on her behalf, and on behalf of all others similarly situated.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: August 27, 2020                              Respectfully submitted,

                                                                       */s/ Anthony G. Simon*
                                                                       John G. Simon, #35231
                                                                       Anthony G. Simon, #38745
                                                                       Benjamin R. Askew, #58933
                                                                       Anthony R. Friedman, #65531
                                                                       THE SIMON LAW FIRM, P.C.
                                                                       800 Market Street, Suite 1700
                                                                       St. Louis, Missouri  63101
                                                                       (314) 241-2929
                                                                       Fax:  (314) 241-2929
                                                                       jsimon@simonlawpc.com
                                                                       asimon@simonlawpc.com
                                                                       baskew@simonlawpc.com

afriedman@simonlawpc.com

Michael D. Stokes
Gonzalo A. Fernandez
DEVEREAUX, STOKES, NOLAN,
FERNANDEZ & LEONARD
133 S. 11th Street, Suite 350
St. Louis, Missouri  63102
(314) 621-3743
Fax:  (314) 621-5705
lori@stltriallawyers.com
gonz@stltriallawyers.com


*Counsel for Plaintiffs*